IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

UNITED STATES OF AMERICA,             :
                                      :
            Plaintiff,                :
                                      :
      v.                              :         Crim. No. 12-794 (RBK)
                                      :
SEZAYIR BULAMAN,                      :         **OPINION**
                                      :
            Defendant.                :
                                      :

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Sezayir Bulaman's Motion for

Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 119). For the reasons

set forth below, Defendant's Motion is **DENIED**.

## I.       BACKGROUND

### A. Factual Background

Defendant Sezayir Bulaman is an inmate in federal custody at Federal Correctional

Institution Manchester ("FCI Manchester") in Kentucky. (ECF No. 121 at 4). In April 2017,

Defendant pleaded guilty to conspiracy to distribute and posses with the intent to distribute 5

kilograms or more of a mixture of a substance containing cocaine in violation of 21 U.S.C. §

846. (ECF No. 103). In October 2017, Defendant was sentenced to a total of 168 months in

prison, followed by five years of supervised release. (*Id.*)

Defendant was extradited to the United States by Canadian authorities and arrested on

October 22, 2015. (ECF No. 119 at 4) (citing ECF No. 5). At the time, Defendant was a legal

permanent resident in Canada, having fled religious persecution in his home country of Turkey

in 1994. (*Id.* at 4, 11). After he pleaded guilty in this case, the Bureau of Prisons lodged an immigration detainer against Defendant at the request of the Department of Homeland Security. (*Id.*). Defendant applied for a transfer to Turkey under the International Prisoner Treaty Transfer Program, but his application was denied on July 20, 2020 based on insufficient ties to Turkey. (ECF No. 119 at 6).

On September 22, 2021, Defendant filed the current motion with the Court seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on hardships caused by the COVID-19 pandemic and potential future complications arising from his immigration status. (ECF No. 119). The United States opposes Defendant's request. (ECF No. 121).

On March 22, 2022, Defendant's counsel, Jerome M. Brown, moved to withdraw from the suit at Defendant's request. (ECF No. 122). Mr. Brown indicated that he and Defendant had irreconcilable differences because Mr. Brown had advised Defendant against withdrawing the instant motion for compassionate release. (*Id.*). In April 2022, this Court granted Mr. Brown's motion to withdrawal. (ECF No. 123). On May 10, 2022, Defendant submitted a formal request for compassionate release to the Bureau of Prisons. (ECF No. 124, Ex. A). This request was denied by the Acting Warden of FCI Manchester on May 17, 2022. (*Id.*)

Although Defendant apparently notified Mr. Brown of his desire to have his Motion for Compassionate Release withdrawn, (ECF. No. 122 at 4), Defendant has not made such a request to the Court. Further, Defendant subsequently submitted a reply to the Government's opposition brief. (ECF No. 124). Therefore, the Court will treat Defendant's Motion for Reduction of Sentence as pending, to be ruled on herein.

## II.    LEGAL STANDARD

### A. Motion for Reduction of Sentence Under the First Step Act

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons, for a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i) provided, however, they satisfy the exhaustion requirements first. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is to exhaust any available administrative remedies. Before bringing a motion for reduced sentence on their own behalf, a defendant "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Thirty days after submitting the request or after receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.* At the second step, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, Crim. No. 06-849, 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (*quoting United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)).

3

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13, is a catchall provision that gives the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

The Third Circuit recently held that courts are not bound by Section 1B1.13's definition of "extraordinary and compelling reasons" when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022). Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions. *Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

**III.   DISCUSSION**

### a. Exhaustion of Administrative Remedies

As the Government notes, it is unclear whether Defendant properly exhausted his administrative remedies prior to filing the instant motion on September 22, 2021. (ECF No. 121 at 8 n.3). In his response to the Government's opposition, however, Defendant includes a response from the Acting Warden of FCI Manchester, dated May 17 of 2022, denying his request for a reduction in sentence. (ECF No. 124, Ex. A). Because the United States does not explicitly challenge exhaustion here, the Court will proceed to the merits of Mr. Bulaman's motion. *See United States v. Fields*, 569 F. Supp. 3d 231, 236 (E.D. Pa. 2021) ("As the government has not asserted failure to exhaust as an affirmative defense, it is forfeited.").

### b. Extraordinary and Compelling Reasons

Defendant asserts that undue hardship brought about by the COVID-19 pandemic, in combination with his "unusual immigration status," constitute extraordinary and compelling circumstances warranting compassionate release. (ECF No. 119 at 3).

### i. COVID-19 Pandemic

In his motion for compassionate release, Mr. Bulaman contends that the measures imposed at BOP facilities to contain the spread of COVID-19 have created unduly harsh conditions that are more punitive than were contemplated at the time of his sentencing, justifying compassionate release.[1] (ECF No. 119 at 9). In his reply brief, Mr. Bulaman also argues that the risk he faces from COVID-19 due to his incarceration and weight constitutes an extraordinary and compelling reason for early release. (ECF No. 124 at 3–4).[2]

---

[1] Specifically, Defendant notes that, at times, prisoners are confined to their cells twenty-three hours a day, which has caused rehabilitative, corrective, and recreational programming to be curtailed or stopped altogether. (ECF No. 119 at 8). Additionally, Defendant notes that the border restrictions between Canada and the United States and lockdown conditions have made it difficult for Mr. Bulaman to maintain contact with his family and friends, straining his personal relationships. (*Id.* at 9–10).

[2] As best the Court can discern, Mr. Bulaman also asserts that the conditions of his incarceration during the COVID-19 pandemic violate the Fifth and Eighth Amendments of the U.S. Constitution. (ECF No. 124 at 4–5). "But a

The Court begins with Defendant's argument regarding his risk of contracting COVID-19. The Third Circuit has indicated in an unpublished opinion that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020). Most defendants who successfully move for compassionate release through Section 3582(c)(1)(A) on COVID-19 grounds demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or a medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).

Here, Defendant has not demonstrated that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI Manchester. There are currently no active cases of COVID-19 at FCI Manchester among inmates and two active cases among staff. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited August 26, 2022). Additionally, 123 staff members and 1,037 inmates at FCI Manchester have been fully vaccinated against COVID-19 to date, and inmates have been offered booster shots. *Id.* The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States of America v. Martinez*, Crim. No. 16-503, 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison.").

---

motion in a criminal case is not the proper avenue to address allegations of improper treatment within a jail or prison." *United States v. Greene*, Crim. No. 06-312, 2022 WL 3354745, at *4 (D.D.C. Aug. 12, 2022); *United States v. Coutinho-Silva*, Crim. No. 10-002, 2022 WL 3448636, at *5 (E.D. Pa. Aug. 17, 2022) ("Construed as a claim that he is being held in unconstitutional conditions of confinement, a motion for compassionate release is not the proper vehicle to bring such a claim." (citing *Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002)); *see also United States v. Perkins*, Crim. No. 17-180-2, 2022 WL 2980547, at *6 (W.D. Pa. July 28, 2022) (same).

Nor does Defendant establish that the risks he faces from COVID-19, in light of his individual medical conditions and circumstances, are so extraordinary and compelling as to justify compassionate release. Bulaman asserts that by virtue of his weight, he is at unique risk of serious illness from COVID-19. (ECF No. 124 at 3). Though obesity may raise the risk of severe illness due to COVID-19, *Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 26, 2022), courts have consistently found that the fact that an inmate may be at heightened risk from COVID-19 due to his or her weight is insufficient, without more, to constitute an "extraordinary and compelling" reason for compassionate release, *see, e.g.*, *United States v. Garrett*, Crim. No. 18-125, 2022 WL 1617679, at *2 (D.N.J. May 23, 2022) *aff'd*, No. 22-2129, 2022 WL 3226615 (3d Cir. Aug. 10, 2022) ("As to weight and hypertension, courts have generally found that those do not constitute extraordinary and compelling circumstances requiring compassionate release....") (collecting cases); *United States v. Johnson*, Crim. No. 18-578-01, 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022) (same) (collecting cases).

Further, as Defendant is fully vaccinated against COVID-19, (ECF No. 121 at 11), he is substantially protected from COVID-19 infection and, in the case of another breakthrough infection, from severe symptoms, *see United States v. Williams*, Crim. No. 11-00421-1, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022) ("If a defendant is vaccinated, many courts have found that there is an insignificant likelihood that the defendant 'will contract COVID-19 and become seriously ill.'" (citation omitted)) (collecting cases). The Third Circuit recently recognized in an unpublished decision that "[g]iven vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling

reason for release unless he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" *United States v. Estevez-Ulloa*, Crim. No. 21-2432, 2022 WL 1165771, at *2 (3d Cir. Apr. 20, 2022) (citing *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)). Mr. Bulaman has not made such a showing here.

Next, the Court addresses Defendant's argument regarding the lockdown conditions during the pandemic. The cited conditions are not unique to Defendant—prisoners across federal facilities have been subject to such conditions as a result of the COVID-19 pandemic. *United States v. Acosta*, Crim. No. 19-389, 2022 WL 2133866, at *4 n.3 (E.D. Pa. June 14, 2022) ("'[H]arsh' conditions of confinement created in response to the COVID-19 pandemic are applicable to 'all inmates and do not in themselves warrant special treatment.'" (citation omitted)). And though the restrictions imposed in prison facilities to combat COVID-19 are certainly onerous, they have been implemented to protect the health and well-being of prisoners. *See United States v. Everett*, Crim. No. 12-162, 2021 WL 322182, at *6 (W.D. Pa. Feb. 1, 2021) ("Moreover, the Court recognizes that while the BOP addresses the challenges posed by the COVID-19 pandemic, access to programming and mental health treatment will be temporarily limited, perhaps significantly so. Indeed, the purpose of such limitations is to protect the health of inmates and facility staff during a once-in-a-century pandemic." (internal quotations and citations omitted)). While the lockdown conditions are undoubtedly very challenging for Defendant, the Court does not find that the current conditions of his confinement at FCI Manchester are so uniquely extraordinary and compelling that compassionate release is warranted. *See United States v. Ali*, Crim. No. 11-00752, 2022 WL 3357915, at *4 (D.N.J. Aug.

15, 2022) (noting that "the fact that that Defendant has experienced strict lockdowns because of COVID-19 is not a reason that justifies compassionate release").

Last, the Court finds that Mr. Bulaman's good behavior while incarcerated, (ECF No. 119 at 4–5), though commendable, does not constitute an extraordinary and compelling reason for release, *see Garrett*, 2022 WL 1617679, at *3 ("Finally, while the Court commends Defendant for his good behavior, a defendant's rehabilitation 'is not, by itself, an extraordinary and compelling reason.'" (citing U.S.S.G. 1B1.13, Application Note 3)).

The Court does not wish to minimize Mr. Bulaman's concern for his well-being or seriousness of the COVID-19 pandemic for those in custody. However, Mr. Bulaman has failed to demonstrate that his circumstances warrant release. He has not shown that he is at a uniquely high risk for severe illness from COVID-19, nor has he proven that there is currently an actual risk of exposure at FCI Manchester. Further, lockdown conditions necessitated by the COVID-19 pandemic do not, in this case, constitute an extraordinary and compelling reason for compassionate release.

### ii. Immigration Status

Mr. Bulaman argues that he "will likely spend a significantly longer period of time in ICE custody after his sentence is complete, than the average person, due to his unique immigration status." (ECF No. 119 at 11). Because Defendant was convicted and sentenced in the United States, he has failed to be physically present in Canada 730 days out of every five-year period and thus has lost his permanent resident status in Canada. (*Id.* at 10–11). As such, Defendant contends that he "must receive special permission" to return to Canada, "which will require an extended period of incarceration…" after he has finished serving his sentence in the instant case. (*Id.* at 10). Defendant further asserts that Canada may not allow him to return,

forcing him to request a transfer back to Turkey. (*Id.*) He asks the Court to "modify [his] sentence to one of time served to effectively begin immediate deportation proceedings which will take a significant period of time to determine a country that will accept him." (*Id.* at 11).

Whatever the merit of these predictions, Defendant's immigration status does not, in and of itself, constitute an extraordinary and compelling reason for compassionate release. *Cf. United States v. Jabateh*, Crim. No. 18-216-3, 2021 WL 5802493, at *2 (W.D. Pa. Dec. 7, 2021) ("While research did disclose cases in which compassionate release was granted despite the fact that an immigration detainer was in place, it did not disclose any case law indicating that a pending deportation served as the basis for a finding of extraordinary and compelling circumstances. Nor has the Defendant identified any."). This case is not analogous to *United States v. Qadar*, cited by Defendant, where the court granted compassionate release not because of deportation complications but because of "[the defendant's] medical conditions, the effects of continued lockdown, and [his wife's] declining health, combined with preexisting evidence of his good character, rehabilitation, and prison accolade." Crim. No. 00-603, 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021). The Court has already found that Mr. Bulaman's medical conditions, effects of lockdown, and rehabilitation do not justify compassionate release here.

Defendant also argues that his immigration status renders him ineligible for placement in a minimum-security camp, Residential Drug Abuse Program ("RDAP"), or community correction center and has precluded him from any incentive-based time credit programs, thereby making his incarceration more punitive than would be the case for a U.S. citizen. (ECF No. 119 at 5). However, placement in these programs is not a right or condition of incarceration—rather, it is an opportunity. *See United States v. Sobrado*, Crim. No. 1:18-615-1, 2021 WL 2328143, at *3 (D.N.J. June 7, 2021) ("[P]articipation in the RDAP is not a right but an opportunity that is

10

denied federal inmates for a variety of reasons nor is success in the program guaranteed."). The inability to participate in credit programs is not an extraordinary and compelling reason justifying compassionate release.

### b. Section 3553(a) Factors

Even if Mr. Bulaman's medical conditions and immigration circumstances offered extraordinary and compelling reasons for compassionate release, the Section 3553(a) factors would still counsel against release in this case. *See United States v. Pizzo*, Crim. No. 19-298, 2022 WL 1045235, at *3 (E.D. Pa. Apr. 7, 2022) ("Even if [the defendant] did present extraordinary and compelling reasons for release, it would be unwarranted based on the § 3553(a) factors."). When considering whether to reduce a defendant's sentence, courts look to the factors contained in 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Defendant argues that the time he has already served, which accounts for roughly 64 per cent of his full term of imprisonment and 76 per cent of his statutory term, has provided just punishment to adequately deter future criminal conduct and reflects the seriousness of his offense. (ECF No. 119 at 13). Further, Defendant argues that because he will be "immediately

deported upon completion of his sentence, there is no need to protect the public from future crimes committed by Mr. Bulaman." (*Id.*) He points to evidence of his good character and lack of criminal history to support these claims. (*Id.* at 12). Last, Defendant asserts the lack of BOP programming available due to COVID-19 counsels in favor of compassionate release. (*Id.* at 13).

The Court does not agree. The nature and circumstances of Defendant's offense weigh against early release. Defendant orchestrated the trafficking of substantial amounts of narcotics across international borders by sophisticated means—an extremely serious offense. *See* Presentence Report ¶¶ 9–25. This suggests that the public does indeed need to be protected from potential future criminal activity, and that Mr. Bulaman, specifically, must be deterred from future criminal activity. Further, his sentence of 168 months imprisonment properly reflects the severity of Defendant's crime and provides just punishment for his conduct. Finally, the lack of available BOP programming is a temporary response to the pandemic, and does not outweigh the other § 3553(a) factors that counsel against compassionate release here.

## IV.    CONCLUSION

For the reasons expressed above, Defendant's motion for Motion for Reduction of Sentence under the First Step Act (ECF No. 119) is **DENIED**. An order shall issue.


Dated:   08/29/2022

ROBERT B. KUGLER
United States District Judge

12